IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

|  |  |
|---|---|
| **IPSCO STEEL (ALABAMA) INC.,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | CIVIL ACTION NO. 01-0730-CG-C |
| ) | |
| **KVAERNER U.S. INC., <u>et al.</u>,** ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

This cause is before the court on the motion of Kvaerner U.S. Inc. to dismiss (Doc. 22), which was converted to a motion for summary judgment (Doc. 409), briefs in support (Docs. 23 & 26), opposition thereto of IPSCO Steel (Alabama) Inc. ("IPSCO Alabama") (Doc. 27), Kvaerner's supplemental filing (Doc. 229), IPSCO Alabama's opposition to the supplemental filing (Doc. 261), Kvaerner's reply to IPSCO's opposition to supplemental filing (Doc. 277), Kvaerner's motion to dismiss 3rd amended complaint and brief in support (Docs. 319 & 320), Kvaerner's reply brief in support (Doc. 327), IPSCO Alabama's surreply (Doc. 335), Kvaerner's second supplemental filing (Doc. 389), IPSCO Alabama's brief in opposition to Kvaerner's second supplemental filing (Doc. 397), and Kvaerner's reply in support of motion for summary judgment (Doc. 413).

## BACKGROUND

This breach of contract action initially brought by IPSCO Steel (Alabama) Inc. ("IPSCO") against Kvaerner U.S. Inc. ("Kvaerner"), arises out of a project for the construction of IPSCO's steel mill in Axis, Alabama. On or about January 19, 1999, IPSCO entered into a project management

1

agreement with Kvaerner whereby Kvaerner agreed to act as project manager for the aforementioned project. IPSCO does not own the property on which the steel mill was to be constructed, but instead leases the property from the Industrial Development Authority of Mobile County. The project was completed in April 2001.

**A. Summary Judgment Standard**

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be granted: "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The trial court's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). "The mere existence of some evidence to support the non-moving party is not sufficient for denial of summary judgment; there must be 'sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'" Bailey v. Allgas, Inc., 284 F.3d 1237, 1243 (11th Cir. 2002) (quoting Anderson, 477 U.S. at 249). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, at 249-250. (internal citations omitted).

The basic issue before the Court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." See Anderson, 477 U.S. at 251-252. The moving party bears the burden of proving that no genuine issue of material fact exists. O'Ferrell v. United States, 253 F.3d 1257, 1265 (11th Cir. 2001). In evaluating the argument of the moving party, the court must view all evidence in the light most favorable to the non-moving party, and resolve all reasonable doubts about the facts in its favor. Burton v. City of Belle Glade, 178 F.3d 1175, 1187

(11th Cir.1999). "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." Miranda v. B&B Cash Grocery Store, Inc., 975 F.2d 1518, 1534 (11th Cir. 1992) (citing Mercantile Bank & Trust v. Fidelity & Deposit Co., 750 F.2d 838, 841 (11th Cir. 1985)).

Once the movant satisfies his initial burden under Rule 56(c), the non-moving party "must make a sufficient showing to establish the existence of each essential element to that party's case, and on which that party will bear the burden of proof at trial." Howard v. BP Oil Company, 32 F.3d 520, 524 (11th Cir.1994)(citing Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986)). Otherwise stated, the non-movant must "demonstrate that there is indeed a material issue of fact that precludes summary judgment." See Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). The non-moving party "may not rest on the mere allegations or denials of the [non-moving] party's pleading, but .... must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e) "A mere 'scintilla' of evidence supporting the [non-moving] party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990) (citation omitted). "[T]he nonmoving party may avail itself of all facts and justifiable inferences in the record taken as a whole." Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998 (11th Cir. 1992). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 at 587 (1986) (internal quotation and citation omitted).

**II. General Contractor**

Kvaerner asserts that IPSCO Alabama is an unlicensed general contractor and, as such, cannot enforce the project management agreement. "It is well settled that '[e]xpress or implied contracts entered into by an unlicensed general contractor are null and void because they violate public policy.' " Triple D Trucking, Inc. v. American Petroleum Equipment and Const., Inc., 865 So.2d 1234, 1237 (Ala.Civ.App. 2003) (quoting White v. Miller, 718 So.2d 88, 89 (Ala.Civ.App. 1998)). Related claims based on causes of action other than contract, including negligence, also cannot be pursued if

they arise out of the performance of the illegal contract. White v. Miller, supra at 90); see also Architectural Graphics and Const. Services, Inc. v. Pitman, 417 So.2d 574, 576 (Ala. 1982) ("If a suit to enforce the contract is foreclosed to an unlicensed contractor, so must be a suit by the same unlicensed contractor to collect on a note secured by a mortgage given in consideration of that contract."); Cochran v. Ozark Country Club, Inc., 339 So.2d 1023 (Ala.1976) (same for work, labor, and materials furnished); Tucker v. Trussville Convalescent Home, Inc., 289 Ala. 366, 267 So.2d 438 (1972) (same for an action to establish a mechanic's lien).

> Under Alabama law, anyone who:
>
> for a fixed price, commission, fee, or wage undertakes to construct or superintend or engage in the construction ... of any building ... or project or any improvement in the

State of Alabama where the cost of the undertaking is fifty thousand dollars ($50,000) or more, shall be deemed and held to have engaged in the business of general contracting in the State of Alabama.

ALA. CODE § 34-8-1(a). Plaintiff asserts that IPSCO Alabama was a "general contractor" under the above definition and, as such, cannot enforce express or implied contracts without a general contractor's license.

> To be entitled to a summary judgment on a nonlicensure defense with respect to an alleged general contractor, a party must prove "(1) that the alleged contractor was unlicensed; (2) that the contracted work was of the type covered by the licensure statute; and (3) that the 'cost' of the work was [$50,000] or more." Central Alabama Home Health Servs., Inc. v. Eubank, 790 So.2d 258, 260 (Ala. Civ. App. 2000).

Triple D Trucking Inc. v. American Petroleum Equip. and Construction Inc., 865 So.2d 1234, 1237 (Ala. Civ. App. 2003) (footnote omitted). It is undisputed that IPSCO Alabama did not possess a general contractor's license at the time the construction project was undertaken. It is also undisputed that the project cost more than $50,000. However, IPSCO contends that IPSCO Alabama was not a "general contractor" within the meaning of § 34-8-1. "In determining whether a person has engaged in the type of work covered by this definition, Alabama courts have looked at many factors, such as, the intent of the parties, the amount of control by the person, and the type of work performed by the person. Allstate Insurance Co. v. Hugh Cole Builder, Inc., 127 F.Supp.2d 1235, 1238 (M.D. Ala. 2001) (citing Herbert v. Birmingham-Jefferson Civic Ctr. Auth., 694 F.2d 240, 242 (11th Cir.1982)

(holding that a genuine issue of material fact existed as to whether a person engaged in general contracting where the parties referred to the person as a consultant and the type of work performed by the person may not have constituted general contracting); Dixie Store Fixtures & Sales Co. v. Supreme Fixture Co., 376 So.2d 703, 705 (Ala. 1979) (holding that a company that contracted to supply and install kitchen equipment in a new hospital did not engage in general contracting); Central Alabama Home Health Servs., Inc. v. Eubank, 790 So.2d 258, 2000 WL 1603828, at *3 (Ala.Civ.App. Oct. 27, 2000) (denying a plaintiff's motion for judgment as a matter of law on whether a person engaged in general contracting where the plaintiff hired the person as a consultant, the person did not have personal responsibility for ensuring the completion of the work, and the person was subject to the ultimate control of the plaintiff)). IPSCO, citing language used in the contracting documents and written communications between the parties, asserts that Kvaerner and IPSCO understood that IPSCO Construction, not IPSCO Alabama, would act as the general contractor.

In the instant case, IPSCO Alabama agreed to improve the Industrial Development Authority's property and retained the right to make all decisions concerning the construction. IPSCO Construction obtained a general contractor's license.[1] However, IPSCO Construction has no employees, no bank account, no income or expenses, and no assets. (Wilson Depo. p. 124, Tomlinson Depo pp. 34-35, 54, 69-70, 116, 134; Doc. 229 Ex. 17, 18). Furthermore, IPSCO Alabama employed Steve Palko to direct the construction efforts (Tomlinson Depo. pp. 31, 70, 72). IPSCO Alabama issued contracts with Steel City Erection, Industrial Services of Mobile, Inc., and Paul Stewart's Construction to perform consulting or construction services for the project. (Tomlinson Depo. pp 63,67). In fact, all contracts for the steel mill were allegedly entered into by IPSCO Alabama. (Wilson Depo. p. 179). IPSCO Alabama also issued purchase orders to American Building Systems, Thompson Engineering,

---

[1] The court is cognizant of the fact that Kvaerner contends that even IPSCO Construction was not properly licensed. Kvaerner contends that IPSCO Construction did not qualify for a general contractor's license because it submitted misleading and false financial and work experience data to the Alabama Licensing Board and because it in fact had no assets or experience.

Steel City Erection & Crane Rental Co., and Industrial Services of Mobile, Inc. (Tomlinson Depo. pp 66-67; Doc. 229 Ex. 13 - 15).  IPSCO Alabama procured the equipment for the project. (Tomlinson Depo. p 133).  IPSCO Alabama also approved all amendments to all contracts (Tomlinson Depo. p. 141).  In addition, Kvaerner's general contract agreement is with IPSCO Alabama, not IPSCO Construction, and Kvaerner performed engineering and construction management, leaving everything else to be subcontracted by IPSCO Alabama.  (Palko Depo. p. 76).

The work performed and the amount of control IPSCO Alabama maintained strongly support Kvaerner's view that IPSCO Alabama acted as a general contractor.  However, as IPSCO correctly notes, courts interpreting § 34-8-1 have also considered the parties' descriptions of contractual responsibilities in determining whether a party is a "general contractor."  See Herbert v. Birmingham-Jefferson Civic Ctr. Auth, 694 F.2d 240 (11th Cir. 1982).  Language used in the contracting documents and written communications between the parties supports IPSCO's contention that the parties viewed IPSCO Alabama as the owner and intended for IPSCO Construction to serve as a general contractor. None of the documents refer to IPSCO Alabama as a general contractor.   If the parties had intended IPSCO Alabama to be a general contractor, they could have obtained a license for IPSCO Alabama rather than creating and licensing IPSCO Construction.

IPSCO Alabama also argues that it was not a general contractor because it owned the steel mill. IPSCO does not own the land on which the mill was to be constructed, but has title to any "improvements," including "all buildings, structures, fixtures and other improvements" "located upon, in or under or placed upon, in or under the property." (Ground Lease § 1A(ii)).  According to IPSCO Alabama, the reason IPSCO Construction was created was to allow out-of-state contractors to work as subcontractors under Alabama Code § 34-8-7, which provides an exception to the general contractor statute "for a contractor performing work under a properly licensed general contractor."[2]   IPSCO

---

[2] Kvaerner's general counsel, James Tedjeske, acknowledged this fact in a letter dated May 18, 1999, which included the following:
    We are writing to confirm the understanding between Kvaerner and IPSCO with

Alabama argues that it did not "for a fixed price, commission, fee, or wage undertake[] to construct or superintend or engage in the construction ... of any building ... or project or any improvement" as defined in the license statute. ALA. CODE § 34-8-1(a). IPSCO Alabama was not paid to construct the mill for another entity. IPSCO did not pay itself for performing general contracting work.

> Alabama law specifically exempts from the licensing requirement:
>
> A person, firm, or corporation constructing a building or other improvements on his, her, or its own property provided that any of the work contracted out complies with the definition in this chapter for "general contractor."

ALA.CODE § 34-8-7(a)(3). While IPSCO admittedly does not own the land on which the mill was built, it did own the facility or improvement for which the work was performed. Moreover, § 34-8-1 "is... regulatory legislation designed to protect the public against incompetent contractors and to assure properly built structures that are free from defects and dangers to the public." Thomas Learning Center, Inc. v. McGuirk, 766 So.2d 161, 169 (Ala. Civ.App. 1998); White v. Miller, 718 So.2d 88, 89-90 (Ala.Civ.App. 1998); Architectural Graphics and Const. Services, Inc. v. Pitman, 417 So.2d 574, 576 (Ala. 1982); Cooper v. Johnston, 283 Ala. 565, 219 So.2d 392 (1969).

---

> respect to the agreement which IPSCO proposes to enter into with IPSCO Construction Inc. ("ICI"), as contemplated by section 3.09 of the Agreement. By way of background, during the negotiation of the Agreement between IPSCO and Kvaerner, it was determined that each Supplier (as defined in the Agreement) doing construction work on the Project would be required to obtain a license under the General Contractor Licensing Statute in Alabama (the "Licensing Statute"). It was felt that this would adversely affect the bid and contracting process and overall schedule for completion of the Project, since the Licensing Board meets only once every three months to consider applications. However, a recent amendment to the Licensing Statute provides exceptions for the licensing of a subcontractor under the supervision of a general contractor, reducing the fee for licensing, streamlining the process and relieving the subcontractor of the requirement of having a license at the time of the bid. As a result, it was decided that it would be of benefit to both IPSCO and Kvaerner for IPSCO to enter into a construction contract with ICI, which would obtain a license as a general contractor and enter into subcontracts for the performance of the construction work related to the Project.

(May 18, 1999 letter - Doc. 261, Ex. F).

An entity building for itself, unlike a general contractor undertaking work for another, has its own incentive to perform well.   IPSCO did engage general contractors on the project, including Kvaerner, who were responsible for ensuring that the work was properly constructed. (Tedjeske Depo pp. 255-256).  These non-owner contractors were required to obtain a license.  See Hawkins v. League, 398 So.2d 232, 236-37 (Ala. 1981) (finding that the licensing requirement applied to contractors hired by owners).  The purpose of the licensing statute is not advanced by requiring IPSCO to be licensed.  The court finds that although IPSCO Alabama may have undertaken general contracting functions, such actions were undertaken by IPSCO Alabama as the owner of the steel mill.  IPSCO was not required by § 34-8-1(a) to be licensed.   Therefore, the court finds that Kvaerner clearly has not met its burden of demonstrating that it is entitled to judgment as a matter of law.

## CONCLUSION

For the reasons stated above, the motion of Kvaerner U.S. Inc. to dismiss (Doc. 22), which was converted to a motion for summary judgment, is **DENIED**.

**DONE** and **ORDERED** this 25th day of May, 2005.

  /s/ Callie V. S. Granade  
CHIEF UNITED STATES DISTRICT JUDGE